IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEAN WARAICH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-4069 |
| | § | |
| NATIONAL AUSTRALIA BANK LTD., and | § | |
| INTERNATIONAL CAPITAL MARKETS | § | |
| PTY. LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In October 2018, Sean Waraich sued International Capital Markets Propriety Limited and National Australia Bank Limited. Waraich alleged that International Capital Markets—an Australia company that brokers transactions on the spot foreign-exchange, or forex, market through an online trading platform—misrepresented that it was registered as a "swap dealer" with the United States Commodity Futures Trading Commission. 7 U.S.C. § 6s. He alleged that International Capital Markets asked its clients, including United States residents, to transfer the funds they intended to trade on the foreign-exchange market to an account maintained by National Australia Bank. Waraich alleged that he transferred about $120,000 to the account, which he used and lost in transactions on the foreign-exchange market. He alleged that International Capital Markets's "solicitation and acceptance of his business was improper because its representations that it was a 'qualified forex dealer entity in complete extended compliance with U.S. federal regulations' were 'merely fabrications, misleading and manipulative statements solely intended to target and lure U.S. traders.'" (Docket Entry No. 15 at 10 (quoting Docket Entry No. 1 at 3)).

National Australia Bank has moved to dismiss for lack of personal jurisdiction and failure

to state a claim, or, in the alternative, to transfer venue to the Southern District of New York, where National Australia Bank has its sole United States office. Waraich responded, National Australia Bank replied, and Waraich surreplied. Based on a careful review of the complaint, documents submitted into the record, motion, response, reply, and surreply, the court dismisses Waraich's complaint for lack of personal jurisdiction. The reasons are explained in detail below.

**I.  The Background**

In June 2013, Waraich began trading foreign currencies through brokers known as "swap dealers." In a "swap" agreement, the parties agree to exchange "cash flows at specified intervals, calculated by reference to an index," such as "currency rates." *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1042 (9th Cir. 2003); *see Bloomberg L.P. v. Commodity Futures Trading Comm'n*, 949 F. Supp. 2d 91, 96 (D.D.C. 2013) ("A 'swap' is a contract that typically involves an exchange of one or more payments based on the underlying value of a notational amount of one or more commodities, or other financial or economic interest, and it transfers between the parties the risk of future change in that value without also transferring an ownership interest in the underlying asset or liability." (quotation omitted)). A person may not broker a swap transaction unless that person has registered with the Commodity Futures Trading Commission. 7 U.S.C. § 6s(a)(1).

Between June and August 2013, Waraich traded currencies on the foreign-exchange market through the Alpari Group, a company headquartered in Mauritius. Alpari terminated its services to United States customers in August 2013, and transferred clients who did not object to Forex Capital Markets, a New York company. Waraich told Alpari that he did not want to trade with Forex Capital Markets.

That August, after Waraich had parted ways with Alpari, International Capital Markets, an Australia-based company, approached Waraich and offered to broker his transactions on the foreign-exchange market, presumably including swap agreements. International Capital Markets asked Waraich to complete an application and a "Qualified Eligible Person" form. These required him to provide valid United States identification, proof of address, and documents demonstrating his trading experience. (Docket Entry No. 1 at 2). Waraich claims to have submitted his Texas driver's license, bank statements, and documents showing his earnings from his time trading with Alpari. International Capital Markets approved Waraich's application.

International Capital Markets had a bank account with National Australia Bank, called the "International Capital Markets Client Trust Account." (Docket Entry No. 1-5 at 2–5). When a client, like Waraich, wanted to do a transaction on the foreign-exchange market, the client would wire money to the Client Trust Account. (*Id.*). International Capital Markets would credit the client with that money for transactions on the foreign-exchange market. (*Id.* at 7–13). Between August 2013 and February 2016, Waraich alleges that he transferred approximately $120,000 to the Client Trust Account, which International Capital Markets credited to him but that he lost in trading. (Docket Entry No. 1 at 2).

In 2016, Waraich learned that International Capital Markets was not registered as a swap dealer in the United States. (*Id.* at 3–4). Waraich invoked the U.S. Commodity Futures Trading Commission's procedures, allowing a person to seek "a reparation award" for a Commodities Exchange Act violation under 17 C.F.R. § 12.13(a). Waraich submitted a complaint against

National Australia Bank,[1] alleging that International Capital Markets illegally allowed him to make swap transactions on the foreign-exchange market without being registered with the Commission, causing him to lose $120,000.

In a reparation, the parties may choose a voluntary, summary, or formal proceeding. 17 C.F.R. § 12.26. Waraich and National Australia Bank agreed to a voluntary proceeding, which is:

> a 'no-frills' adjudication by a [Commission] Judgment Officer based on the parties' documentary and tangible submissions of proof. Both parties must elect this proceeding for it to apply. 17 C.F.R. § 12.26(a). In agreeing to a voluntary decisional proceeding, the parties waive their rights to an oral evidentiary hearing, to a written statement of findings of fact and conclusions of law, to the recovery of attorney's fees and costs, and to appeal the final decision to the Commission. *Id.* §§ 12.100(b), 12.105–.106.

*Carr Invs., Inc. v. Commodity Futures Trading Comm'n*, 87 F.3d 9, 11 (1st Cir. 1996). The parties may not "appeal the final decision to a U.S. Court of Appeals." 17 C.F.R. § 12.100(b). The final unappealed decision is the "final order of the Commission for all other purposes including the judicial enforcement of an award made in connection with the final decision." *Id.* § 12.106(d).

In April 2018, the Commission Judgment Officer issued a final order after "carefully reviewing the legal and evidentiary record." *Waraich v. Nat'l Austl. Bank, Ltd.*, CFTC No. 17-R011, 2018 WL 2387844, at *1 (Apr. 20, 2018). She determined that Waraich's complaint "failed to establish, by a preponderance of the evidence, any violations of the Commodity Exchange Act or

---

[1] A court "may take judicial notice of 'a document filed in another court to establish the fact of such litigation and related filings,' but generally cannot take notice of the findings of fact from other proceedings because those facts are usually disputed and almost always disputable." *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (per curiam) (alterations omitted) (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)); *see Blank v. Collin Cty.*, 710 F. App'x 203, 204 (5th Cir. 2018) ("A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." (quotation omitted)); *Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (per curiam). The court takes judicial notice of the filings and final decision from the reparation proceeding to establish the fact and result of that litigation, not to draw or adopt factual inferences from them.

4

Commission regulations by [National Australia Bank] proximately causing damages." *Id.* The Judgment Officer dismissed Waraich's complaint. *Id.* Waraich moved for reconsideration, although the Commission's regulations do not provide for reconsideration of voluntary proceedings. The Judgment Officer nonetheless considered and denied Waraich's motion. *Waraich v. Nat'l Austl. Bank, Ltd.*, CFTC No. 17-R011, 2018 WL 4563082, at *2–*3 (Sept. 17, 2018).

In October 2018, Waraich sued International Capital Markets and National Australia Bank in the Southern District of Texas, raising the same allegations against both International Capital Markets and National Australia Bank as he had before the Commission. Waraich is representing himself. Waraich alleged that International Capital Markets represented that it was registered as a swap dealer, which he discovered was false in May 2017. (Docket Entry No. 1 at 1–4). He alleged that International Capital Markets was not authorized to solicit his investment or to broker swap transactions for United States clients. (*Id.* at 3). Waraich alleged that International Capital Markets violated the Commodities Exchange Act, apparently referring to 7 U.S.C. § 25(a). (*Id.* at 2). He alleged that National Australia Bank violated the Commodities Exchange Act by accepting wire transfers for International Capital Markets, and he appears to assert these claims under 7 U.S.C. § 25(b). (*Id.* at 3). Waraich seeks $120,000 in actual damages for the money he transferred to the Client Trust Account, which he used and lost in transactions on the foreign-exchange market. (*Id.* at 2–3). He also seeks punitive damages. (*Id.*).

National Australia Bank has moved to dismiss, arguing that a United States court lacks personal jurisdiction over it, that claim preclusion bars Waraich's claims, that his claims are time-barred, and that Waraich has failed to state a claim. (Docket Entry Nos. 14–15). Waraich responded that the court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because he

5

served National Australia Bank; National Australia Bank has a New York office; and he transferred money from Houston, Texas, to the Client Trust Account maintained by National Australia Bank. (Docket Entry No. 16 at 20). He argued that claim preclusion does not bar his claims, asserting that the Judgment Officer's final decision was void because she lacked jurisdiction and was biased, violating Waraich's due process rights. (*Id.* at 4–9, 17). Waraich arued that his claims are not time-barred because the Judgment Officer determined the filing of his voluntary proceeding to be timely. (*Id.* at 17). National Australia Bank replied, and Waraich surreplied, reiterating his arguments. (Docket Entry Nos. 17, 19).

The parties' arguments are examined below.

## II. The Legal Standards

A federal court may exercise personal jurisdiction over a nonresident defendant when the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041–.045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Waraich has the burden of demonstrating facts sufficient to establish a *prima face* case for personal jurisdiction over National

6

Australia Bank.

"Minimum contacts" can be established through evidence of "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. A court has specific jurisdiction if the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). A court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a "sufficient nexus" between the nonresident defendant's forum contacts and at least one of the causes of action. *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010). As part of the minimum-contacts analysis, a court evaluates any contracts, the parties' "actual course of dealing," and the parties' "prior negotiations and contemplated future consequences." *Burger King*, 471 U.S. at 479.

When the cause of action does not arise from or relate to the nonresident defendant's

purposeful conduct within the forum state, the court may have general jurisdiction. Due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state for a court to exercise general jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414–16; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). "A court may assert general jurisdiction over non-resident defendants to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (alterations omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" *Id.* at 101–02 (quoting *Johnston*, 523 F.3d at 609). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous[,] and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

"[W]hen personal jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim." *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018). The court must address personal jurisdiction before ruling on claim preclusion, limitations, or failure to state a claim, because those issues all go to the merits of Waraich's claims.

"When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson*, 20 F.3d at 648). "In making its determination, the district court may

consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Id.* (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

## III.     Analysis

The Commodities Exchange Act creates private rights of actions. Section § 25(a) permits a lawsuit against a person, except for entities registered with the Commission, for violating or aiding in a violation of the Commodities Exchange Act. When a plaintiff asserts a claim under this provision, the defendant may be served "in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found," 7 U.S.C. § 25(c), authorizing nationwide service. *See Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 185 (3d Cir. 2000); S. REP. NO. 102-22, at 58 (1991), *reprinted in* 1992 U.S.C.C.A.N. 3103, 3160 (§ 25(c) was amended "to authorize nationwide service of process in, and to add particularized venue provisions for, private actions brought under section [25(a)] of the Act"); *cf. Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contracts with the United States.").

The second cause of action, § 25(b), provides an action against entities registered with the Commission for violations of the Commodities Exchange Act. Nationwide service is not authorized for § 25(b) actions. *See* 7 U.S.C. § 25(c); *Nicholas*, 224 F.3d at 185.

Because Waraich has sued National Australia Bank, an entity that he admits is registered as

9

a swap dealer, the court construes his action as under § 25(b). (Docket Entry No. 16 at 6). Nationwide service does not apply. The issue is whether National Australia Bank has the minimum contacts with Texas necessary to satisfy due process.

Waraich alleged that National Australia Bank was based in Australia but had an office in New York. His sole allegation of Texas contacts is that he wire transferred funds to the Client Trust Account from Houston. Because Waraich initiated these wire transfers, without action by National Australia Bank, they do not support an inference that National Australia Bank purposely sought the benefits and protections of Texas law in accepting the funds. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432–34 (5th Cir. 2014) ("[T]he wire transfers facilitated by Butterfield were initiated by Ritter or Geneva and are thus insufficient to confer jurisdiction."). This does not support specific jurisdiction. Nor has Waraich alleged facts supporting general jurisdiction in Texas. The wire transfers alone are not enough. *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645 (D.S.C. 2005) ("As federal courts have held on many occasions, such customer-initiated bank-to-bank wire transfers do not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank."). Waraich has failed to make out a *prime facie* case of general or specific jurisdiction based on National Australia Bank's Texas contacts.

Waraich reliance on Federal Rule of Civil Procedure 4(k)(2) does not change the result. (Docket Entry No. 16 at 20). Under Rule 4(k)(2):

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2). The rule "sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to

justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *Quick Techs.*, 313 F.3d at 344 (quoting *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996)). Waraich has "the initial burden to plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability (though no need for 'magic words'), but [he has] no burden to negate jurisdiction in every state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018).

Waraich has not pleaded that this court has jurisdiction under Rule 4(k)(2). And even assuming that he had pleaded jurisdiction under this rule, he has not identified a basis to support personal jurisdiction over National Australia Bank based on its United States contacts. National Australia Bank submitted an affidavit from Janet MacRae, National Australia Bank's Company Secretary, stating that National Australia Bank is incorporated in Australia and has its office and headquarters in Melbourne. (Docket Entry No. 15-1). MacRae stated that National Australia Bank's New York office generates only one percent of its global revenue; the Bank "does not have any branch or other office located in any other state, including Texas"; and it holds and maintains client trust accounts only in Australia, not the United States. (*Id.* at 2–3).

Waraich has not submitted or identified evidence showing that National Australia Bank's contacts with the United States are related to his cause of action. The record evidence shows one contact between National Australia Bank and the United States—a New York office generating less than one percent of the Bank's revenue. This contact, standing alone, is unrelated to Waraich's claims. It is also insufficient to support a finding that the Bank had "affiliations with" the United States "so continuous and systematic as to render it essentially at home," as needed for general

11

jurisdiction. *Daimler*, 571 U.S. at 139 (quotation and alteration omitted); *see Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 236 (5th Cir. 2016) ("There is no evidence in the record that [the defendant corporation] has regularly conducted business in the United States, advertised here, maintained assets here, or has been a party to litigation in United States courts."). Waraich has not made out a *prima facie* case of specific or general jurisdiction under Rule 4(k)(2). *See Johnston*, 523 F.3d at 610 ("[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."). The court dismisses his claim against National Australia Bank for lack of personal jurisdiction. The remaining grounds asserted for dismissal need not be reached.

**IV.    Conclusion**

National Australia Bank's motion to dismiss for lack of personal jurisdiction is granted. (Docket Entry Nos. 14–15). An order of dismissal is separately entered.

SIGNED on January 29, 2019, at Houston, Texas.

                                                            _____
                                                                        Lee H. Rosenthal
                                                            Chief United States District Judge