# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| SEAN WARAICH, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-18-4069 |
| § | |
| NATIONAL AUSTRALIA BANK LTD., and § | |
| INTERNATIONAL CAPITAL MARKETS § | |
| PTY. LTD., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND OPINION

Sean Waraich, representing himself, sued International Capital Markets Propriety Limited and the National Australia Bank Limited, alleging that International Capital Markets—an Australia company that brokers transactions on the spot foreign-exchange, or "forex," market through an online trading platform—represented that it was a "qualified forex dealer" complying with U.S. law, despite failing to register as a "swap dealer" with the United States Commodities Futures Trading Commission. (Docket Entry No. 1 at 3); 7 U.S.C. § 6s(a)(1). Waraich alleges that International Capital Markets asked its clients, including United States residents like himself, to transfer the funds they intended to trade on the foreign-exchange market to an account maintained by the National Australia Bank. Waraich allegedly transferred about $120,000 into the account, money that Waraich lost in transactions on the foreign-exchange market. Waraich asserts a violation of the Commodities Exchange Act under 7 U.S.C. § 25(a) based on International Capital Markets's failure to register with the Commission.

Waraich has moved to set aside the order dismissing the National Australia Bank; for leave to amend his complaint to seek punitive damages under Texas law and to assert claims against the

Commission for an alleged Administrative Procedure Act violation; and for default judgment against International Capital Markets. (Docket Entry Nos. 26–29, 31). After carefully examining the complaint, motions, response, the properly considered submissions, and the applicable law, the court denies each of Waraich's motions. The reasons are set out below.

I.      **Background**

In August 2013, Waraich applied for a trading account with International Capital Markets through its website. International Capital Markets provided an "initial notice" before Waraich began his online application. The initial notice stated:

> Unfortunately [Commission] regulation prevents US residents from trading with brokers outside the US[.] As [International Capital] Markets is a regulated broker in Australia we are required to comply with International and Australian regulations[.] If you are a Qualified Eligible Participant (QEP) as defined by **[omitted by Waraich]** you may proceed with the application form, however[,] you will be required to complete a **[omitted by Waraich]** which will assist us in assessing whether you are eligible to trade with us.

(Docket Entry No. 26 at 22–23). Waraich proceeded to complete a Qualified Eligible Person form with representations indicating that he met the "Qualified Eligible Person" requirements under regulations set at the time. (Docket Entry No. 1-1 at 2–3); *see* 17 C.F.R. § 4.7(a)(1)(v), (3)(xi)–(x) (effective Nov. 5, 2012); 17 C.F.R. § 230.501(a)(6) (effective Mar. 28, 2012). Waraich claimed to have submitted his Texas driver's license, bank statements, and documents showing his previous trading earnings. International Capital Markets approved Waraich's application.

International Capital Markets had a bank account with the National Australia Bank, called a "Client Trust Account." (Docket Entry No. 1-5 at 2–5). When a client like Waraich wanted to do a transaction on the foreign-exchange market, the client would wire money to the Client Trust Account. (*Id.*). International Capital Markets would then credit the client with the money for the transactions. (*Id.* at 7–13). Between August 2013 and February 2016, Waraich alleges that he

2

transferred approximately $120,000 to the Client Trust Account, which International Capital Markets credited to him but that he lost in trading. (Docket Entry No. 1 at 2).

In 2016, Waraich learned that International Capital Markets was not registered as a swap dealer in the United States. (*Id.* at 3–4). Waraich invoked the Commission's procedures to seek "a reparation award" for a Commodities Exchange Act violation under 17 C.F.R. § 12.13(a). Waraich filed a complaint with the Commission against the National Australia Bank,[1] alleging that International Capital Markets illegally failed to register with the Commission but allowed him, a U.S. resident, to make swap transactions that caused him to lose $120,000.

The parties may choose a voluntary, summary, or formal reparation proceeding. 17 C.F.R. § 12.26. Waraich and the National Australia Bank agreed to a voluntary,

> 'no-frills' adjudication by a [Commission] Judgment Officer based on the parties' documentary and tangible submissions of proof. Both parties must elect this proceeding for it to apply. 17 C.F.R. § 12.26(a). In agreeing to a voluntary decisional proceeding, the parties waive their rights to an oral evidentiary hearing, to a written statement of findings of fact and conclusions of law, to the recovery of attorney's fees and costs, and to appeal the final decision to the Commission. *Id.* §§ 12.100(b), 12.105–.106.

*Carr Invs., Inc. v. Commodity Futures Trading Comm'n*, 87 F.3d 9, 11 (1st Cir. 1996). The parties may not "appeal the final decision to a U.S. Court of Appeals." 17 C.F.R. § 12.100(b). The final

---

[1] A court "may take judicial notice of 'a document filed in another court to establish the fact of such litigation and related filings,' but generally cannot take notice of the findings of fact from other proceedings because those facts are usually disputed and almost always disputable." *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (per curiam) (alterations omitted) (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)); *see Blank v. Collin Cty.*, 710 F. App'x 203, 204 (5th Cir. 2018) ("A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." (quotation omitted)); *Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (per curiam). The court takes judicial notice of the filings and final decision from the reparation proceeding to establish the fact and result of that litigation, not to draw or adopt factual inferences from them.

unappealed decision is the "final order of the Commission for all other purposes including the judicial enforcement of an award made in connection with the final decision." *Id.* § 12.106(d).

In April 2018, the Commission Judgment Officer issued a final order after "carefully reviewing the legal and evidentiary record." *Waraich v. Nat'l Austl. Bank, Ltd.*, CFTC No. 17-R011, 2018 WL 2387844, at *1 (Apr. 20, 2018). The Officer determined that Waraich's complaint "failed to establish, by a preponderance of the evidence, any violations of the Commodity Exchange Act or Commission regulations by [the National Australia Bank] proximately causing damages." *Id.* After the Judgment Officer dismissed Waraich's complaint, he moved for reconsideration, which the Judgment Officer considered and denied. *Waraich v. Nat'l Austl. Bank, Ltd.*, CFTC No. 17-R011, 2018 WL 4563082, at *2–*3 (Sept. 17, 2018).

In October 2018, Waraich sued International Capital Markets and the National Australia Bank in the Southern District of Texas, raising the same allegations against both International Capital Markets and the National Australia Bank as he had before the Commission. Representing himself, Waraich alleged that International Capital Markets represented that it was a "qualified forex dealer" in compliance with U.S. law, which he had discovered was false in May 2017. (Docket Entry No. 1 at 1–4). He alleged that because International Capital Markets was not registered with the Commission, it could not solicit his investment or broker swap transactions for United States residents. (*Id.* at 3). Waraich alleged that International Capital Markets violated the Commodities Exchange Act, including 7 U.S.C. § 25(a).[1] (*Id.* at 2). He alleged that the National Australia Bank violated the Commodities Exchange Act by accepting wire transfers for

---

[1] Waraich also mentioned claims under 7 U.S.C. §§ 13 and 18. Section 13 creates criminal penalties for market manipulation and misrepresentations, which can form the basis of a private action subject to § 25(a)'s requirements. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 246–48 (5th Cir. 2010). Section 18 authorizes a person to submit a complaint with the Commission about "any person who is registered under this chapter." 7 U.S.C. § 18(a)(1). Because Waraich alleges that International Capital Markets is not registered, § 18 does not apply.

4

International Capital Markets, and he appears to assert these claims under 7 U.S.C. § 25(b). (*Id.* at 3). Waraich seeks $120,000 in actual damages for the money he transferred to the Client Trust Account, which he lost in transactions on the foreign-exchange market. (*Id.* at 2–3). He also seeks punitive damages. (*Id.*).

The National Australia Bank moved to dismiss for lack of personal jurisdiction. (Docket Entry No. 14). The court granted that motion, finding that neither the complaint nor Waraich's submissions provided a basis for general or specific jurisdiction over the National Australia Bank. (Docket Entry No. 21).

Waraich then moved for entry of default against International Capital Markets and seemingly argued that the court should set aside the decision dismissing the National Australia Bank. (Docket Entry No. 23). The court denied the motion for entry of default because Waraich did not show that International Capital Markets had been properly served under Federal Rule of Civil Procedure 4(f), and denied the motion to set aside the dismissal of the National Australia Bank because "Waraich's motion reiterates arguments that the court has already considered and found unpersuasive." (Docket Entry No. 24 at 2, 5–8).

Waraich has now filed a series of motions asking the court to enter default judgment; to grant leave to amend the complaint to assert punitive damages (though his complaint already sought them) and to name the Commission as a defendant; and to set aside the National Australia Bank's dismissal. (Docket Entry Nos. 26–29, 31). The National Australia Bank responded to Waraich's motion to set aside the dismissal, arguing that, "as with [Waraich's] previous motion for reconsideration, [he] merely 'reiterates that the court has already considered and found unpersuasive.'" (Docket Entry No. 31 (quoting Docket Entry No. 24 at 12)).

Each motion is considered below.

## II. Analysis

### A. The Motion to Set Aside the Dismissal of the National Australia Bank

Rule 60(b) permits the court to relieve a party from a "final judgment, order, or proceeding" under certain conditions, including for newly discovered evidence or "any other reason that justifies relief." FED. R. CIV. P. 60(b). Because Waraich has identified no new evidence of the National Australia Banks's contacts with the United States or the alleged misconduct underlying this lawsuit, he must demonstrate some "other reason that justifies relief." *Id.* This requires Waraich to show "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017) (quotation omitted).

Waraich argues that the court has jurisdiction under Rule 4(k)(2) because the National Australia Bank "colluded with and gave illicit advisement" to International Capital Markets, and because Waraich transferred money to an International Capital Markets account at the National Australia Bank. (Docket Entry No. 28 at 2). Once again, Waraich repeats arguments that the court previously considered and found unpersuasive. (*See* Docket Entry No. 21 at 9–12; Docket Entry No. 24 at 2). Waraich's only new argument is that the National Australia Bank's registration with the Commission establishes general jurisdiction. (Docket Entry No. 31 at 7). The record shows that the National Australia Bank has few contacts with the United States and none related to the current action. While the National Australia Bank's registration is a contact with the United States, it is not enough to show that the National Australia Bank is "essentially at home" in this country. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). That contact does not alter the court's general-jurisdiction analysis, and it has nothing to do with International Capital Markets's alleged wrongdoing. Waraich has not demonstrated an exceptional circumstance justifying relief from the National Australia Bank's dismissal. His Rule 60(b) motion is denied.

### B. The Motion for Leave to Amend

Waraich has sought leave to amend his complaint to seek punitive damages against International Capital Markets under Texas Civil Practice and Remedies Code § 41.008(b)(1)(B), and he has filed a "petition" seeking to "[v]oid" the Commission's "final decision" under the Administrative Procedure Act, 5 U.S.C. § 702. (Docket Entry No. 28 at 1; Docket Entry No. 29 at 1–11). The court considers the petition to be a motion for leave to amend his complaint.

A plaintiff representing himself "should be offered an opportunity to amend" unless he "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (alteration and quotation omitted). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Waraich's motion for leave to amend to seek punitive damages under Texas law is denied as futile because he has asserted no Texas-law claims and his complaint already contains a demand for punitive damages. (*See* Docket Entry No. 1 at 19).

Waraich's motion for leave to amend the complaint to assert a claim to "[v]oid" the Commission's decision is also denied as futile. (Docket Entry No. 29 at 1). Waraich seeks to collaterally attack the Commission's decision dismissing his complaint against the National Australia Bank, after waiving his right to appeal the decision to either the Commission or the United States Court of Appeals. *Carr*, 87 F.3d at 11; 17 C.F.R. §§ 12.100(b), 12.105–.106. The

Commission's decision cannot be appealed to this court. *See La. Pub. Serv. Comm'n v. F.E.R.C.*, 761 F.3d 540, 556–57 (5th Cir. 2014) ("Deciding that the Louisiana Commission's petition attacks a prior order not before us here, we dismiss the petition as an impermissible collateral attack."); *EOG Res., Inc. v. Chesapeake Energy Corp.*, 605 F.3d 260, 265–66 (5th Cir. 2010); *Wilson v. C.I.R.*, 309 F. App'x 829, 832 (5th Cir. 2009) ("The attempt to challenge the IRS's collection action in a CDP hearing by alleging fraud on the court in the underlying liability suit is impermissible."); *City of Nephi v. FERC*, 147 F.3d 929, 934 (D.C. Cir. 1998) ("Challenges to this decision were appropriate during the Order No. 636 proceedings but fall outside of the court's jurisdiction here.").

Even if a collateral attack was permissible,[2] Waraich has not alleged facts supporting any plausible inference that the National Australia Bank made any misrepresentation or had a duty to inform him of the alleged misrepresentations by International Capital Markets. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Waraich concedes that the National Australia Bank is registered with the Commission. The court has no basis to find that the Commission reached an incorrect result. Waraich's motion for leave to amend the complaint to name the Commission as a defendant is denied.

Because Waraich has not identified any additional disputed material facts that he could allege. *Brewster*, 587 F.3d at 768. Waraich's proposed amendments to the complaint are futile and his motion for leave to amend is denied. (Docket Entry Nos. 28–29).

---

[2] *Cf. Metcalfe & Sons Invs., Inc. v. Multiquip, Inc.*, No. Civ. A. 09-941, 2010 WL 7507794, at *4 (M.D. La. Sept. 21, 2010) ("Collateral attack is a litigation device which seeks to invalidate a prior administrative or court ruling by institution of another claim or suit in a different agency or court. A suit may be deemed an impermissible collateral attack, even when brought as against a third party not previously named in an administrative proceeding, when the relief sought would require an attack on a prior administrative ruling.").

### C. The Motion for Entry of Default Judgment

Before a court may enter default judgment, the court must be sure that jurisdiction exists, service was proper, and the complaint states a plausible claim for relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497–98 (5th Cir. 2015); *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986); *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. 16-CV-463, 2018 WL 4688778, at * 3 (W.D. Tex. July 5, 2018); *Hazim v. Schiel & Denver Book Grp.*, No. H-12-1286, 2013 WL 2152109, at *1 (S.D. Tex. May 16, 2013). Waraich contends that he has properly served International Capital Markets under the procedures of New South Wales, Australia; International Capital Markets has not appeared, answered, moved to dismiss, or requested more time to do so; the court may exercise personal jurisdiction over International Capital Markets based on its commercial website; and his complaint states a plausible claim because International Capital Markets was not a Commission-registered swap dealer but nonetheless brokered swap transactions for United States residents.

#### 1. Service

International Capital Markets has its headquarters and principal place of business in Sydney, New South Wales, Australia. (Docket Entry No. 26 at 4). Because International Capital Markets is located outside the United States, Waraich must complete service under Federal Rule of Civil Procedure 4(f). That Rule describes how a plaintiff may serve a foreign defendant. A plaintiff may execute service "by any internationally agreed means of service that is reasonably calculated to give notice," and "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(1), (3); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–16 (9th Cir. 2002). "[I]f there is no internationally agreed means, or if an international agreement allows but does not

specify other means," Rule 4(f) authorizes service through methods "reasonably calculated" to give notice. FED. R. CIV. P. 4(f)(2). The Rule states:

> (A) as prescribed by the foreign country's laws for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>
>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt[.]

*Id.* 4(f)(2)(A)–(C).

The United States and Australia are parties to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. The Convention is an international treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "[C]ompliance with the Convention is mandatory in all cases to which it applies." *Id.* at 705; *cf.* 113 CONG. REC. 9664–65 (1967) (the Senate has ratified the Convention).

Waraich must serve International Capital Markets under the Convention or seek court authorization to use "other means." FED. R. CIV. P. 4(f)(1), (3). Waraich has not asked to serve International Capital Markets through other means. The Convention "requires each state to establish a central authority to receive requests for service of documents from other countries.'" *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (quoting *Schlunk*, 486 U.S. at 698).

10

"When a central authority receives an appropriate request, it must serve the documents or arrange for their service, . . . and then provide a certificate of service." *Id.* The Convention also "allows service by any method of service permitted by the internal law of the country in which service is made." *Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 496 (8th Cir. 2004); *see* Convention on Service Abroad, arts. 10, 19.

United States courts have found that personal service by a process server is permitted in Australia.[3] The Australian Attorney-General's Department states that:

> Private process servers and local agents may also be used in some circumstances to serve documents in Australia. Please refer to the relevant Australian court rules to ensure service via this method is permitted. Using a private process server must also be a permissible form of service in the relevant foreign country that is requesting service.

*Serving a Legal Document Across International Borders*, AUSTRALIAN GOVERNMENT ATTORNEY-GENERAL'S DEPARTMENT, https://www.ag.gov.au/Internationalrelations/PrivateInternationalLaw/Documents/CLU-PIL-prepare-request-for-service-in-australila-incoming.pdf (last visited May 28, 2019). The United States and New South Wales permit personal service by private process servers. *See* FED. R. CIV. P. 4(c); *Uniform Civil Procedure Rules 2005* (NSW) regs. 10.5, 10.10, 10.20–10.22 (Austl.). But the New South Wales regulation on "[l]ocal service of foreign judicial documents" sets out requirements for the service of foreign documents "to which a due form of request for service has been forwarded to the Court." *Uniform Civil Procedure Rules 2005* (NSW)

---

[3] *See Gas Sensing Tech. Corp. v. Ashton*, 353 F. Supp. 3d 1192, 1203 (D. Wyo. 2018) ("Under Australia law, personal service [by a process server] is an acceptable means for accomplishing service."); *Witt v. TFS Surgical (US), Inc.*, No. 16-1042, 2017 WL 3267734, at *3 (D. Minn. July 12, 2017) ("Australia does not object to the use of private process servers." (quotation omitted)); *Deckers Outdoor Corp. v. Ozwear Connection Pty. Ltd.*, No. CV 14-2307, 2014 WL 4679001, at *4 (C.D. Cal. Sept. 18, 2014) ("[T]he rules of civil procedure of New South Wales allow for personal service of process by private process servers for both individuals and businesses."); *DFSB Kollective Co., Ltd. v. Bourne*, No. 11-1046, 2012 WL 2376209, at *3 (N.D. Cal. June 22, 2012); *DFSB Kollective Co., Ltd. v. Tran*, No. 11-CV-1049, 2011 WL 6730678, at *6 (N.D. Cal. Dec. 21, 2011) ("Both the Hague Convention[] and the rules of civil procedure in New South Wales allow personal service of process on an individual by private-process server.").

reg. 11A.13(1). There is no New South Wales regulation that expressly permits service of foreign documents through personal service, and it is unclear whether this regulation limits the service of foreign judicial documents in New South Wales to requests through the central authority. Waraich has provided no authority.

Assuming that the service methods are not limited, Waraich seems to have adequately served International Capital Markets under New South Wales's procedures. Waraich submitted an affidavit from Kevin Cecil Willis, an Australian process server, stating that:

> [o]n the 13th [of] March 2019 at 11.50 am [he] attended the address of International Capital Markets P/L at Level 6 / 309 Kent St[.] Sydney NSW Australia 2000. [He] spoke to a Person who identified self as Maheshika Sirisena Compliant [sic] Manager for the Company. [He] affirm[ed that she] was able [sic] to accept a document[,] Summons dated March 6th from United States District Court for Sean Waraich and Complaint Statement dated October 18[,] 2018[,] from Mr[.] Sean Waraich from the USA. She looked at the document and accepted it on behalf of the company.

(Docket Entry No. 26 at 2). The affidavit was sworn before Mark Gilmore Tyson, "[a] Justice of the Peace in and for the State of New South Wales." (*Id.*). Waraich also submitted a document from the Australian Securities and Investments Commission that listed International Capital Markets's address as "Level 6, 309 Kent Street SYDNEY NSW 2000." (*Id.* at 4).

Australia allows proof of service by "affidavit sworn before . . . any justice of the peace having jurisdiction in the State or part of the State in which the service was effected." *Service and Execution of Process Act 1992* (Cth) pt. 1 s. 11(5)(a)(i) (Austl.). The affidavit must show: "(a) the identity of the person who served it; (b) the time at which and the day on which it was served; (c) the place at which it was served; (d) the way in which it was served; (e) if service was effected in a way that required the person served to be identified—the way in which the person served was identified." *Id.* at s. 11(1). The affidavit Waraich submitted satisfies these requirements, but he nonetheless fails to show jurisdiction.

## 2. Personal Jurisdiction

Waraich alleges that the court has personal jurisdiction over International Capital Markets because its website allows United States residents to apply for, and open, trading accounts to trade on the foreign-exchange market. "To determine whether personal jurisdiction can be exercised over a defendant based on its Internet presence, [the Fifth Circuit] follows the approach developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)." *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018) (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)). "Under *Zippo*, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (quoting *Mink*, 190 F.3d at 336). "Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228 (5th Cir. 2012). "A corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)).

Waraich must make a *prima facie* showing of personal jurisdiction over International Capital Markets. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Because Waraich contends that the court has jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the court examines International Capital Markets contacts with the United States, not a particular state. *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996).

Waraich's allegations do not support the inference that International Capital Markets purposefully availed itself of the privilege of doing business in the United States. Waraich not alleged that International Capital Markets has "offices or sales agents" in the United States or solicits business through "advertising targeted specifically to" the United States. *Pervasive*, 688 F.3d at 228. While Waraich alleges that International Capital Markets marketed and sold online-trading services to him, these allegations do not support an inference that International Capital Markets targeted United States residents. Waraich has not identified any facts showing that any United States resident, other than himself, does business with International Capital Markets through the website. The allegation that International Capital Markets has "a commercial, interactive website which is accessible globally" forms no basis to suggest that International Capital Markets has "purposefully avail[ed] itself of the privilege of conducting activities within the [United States], thus invoking the benefits and protections of its laws." *Id.* at 227–28 (quotation omitted). Based on the current record, the court finds that International Capital Markets's actions toward the United States "were not so deliberate and substantial that [it] should have reasonably anticipated being haled into court." *Id.* at 228. Waraich has not made any *prima facie* showing for personal jurisdiction over International Capital Markets. And his allegation that International Capital Markets violated the Commodities Exchange Act by doing business with him because International Capital Markets was not a "registered as a swap dealer with the Commission," 7 U.S.C. § 6s(a)(1), does not state a plausible Commodities Exchange Act violation.

The United States laws and regulations governing commodity markets, including the foreign-exchange markets and those who do swaps on them, are complex. "Swaps are financial contracts in which two counterparties agree to exchange or 'swap' payments with each other as a result of such things as changes in a stock price, interest rate[,] or commodity price." *Inv. Co. Inst.*

*v. U.S. Commodity Futures Trading Comm'n*, 891 F. Supp. 2d 162, 171 (D.D.C. 2012) (quotation omitted). A person who qualifies as a "swap dealer" must register with the Commission. 7 U.S.C. § 6s(a)(1). Both the Commodities Exchange Act and the Commission's regulations define a swap dealer as "any person" that "(i) holds itself out as a dealer in swaps; (ii) makes a market in swaps; (iii) regularly enters into swaps with counterparties as an ordinary course of business for its own account; or (iv) engages in any activity causing the person to be commonly known in the trade as a dealer or market maker in swaps." 7 U.S.C. § 1a(49)(A); *see* 17 C.F.R. § 1.3. Anyone who meets these criteria "is subject to the registration provisions." 17 C.F.R. § 23.21(a).

The Act and the regulations carve out a "de minimis" exception to the "swap dealer" definition for persons that have less than $8 billion in "swap dealing activity" over "the course of the immediately preceding 12 months." 17 C.F.R. § 1.3; *see* 7 U.S.C. § 1a(49)(D). If the de minimis amount is exceeded, the person must register as a swap dealer. *See* 7 U.S.C. § 1a(49)(D) ("The Commission shall exempt from designation as a swap dealer an entity that engages in a de minimis quantity of swap dealing in connection with transactions with or on behalf of its customers."). Otherwise, not. And the Commodities Exchange Act has extraterritorial effect only for activities that "(1) have a direct and significant connection with activities in, or effect on, commerce of the United States; or (2) contravene such rules or regulations as the Commission may prescribe or promulgate as are necessary or appropriate to prevent the evasion of any provision of this chapter." 7 U.S.C. § 2(i).

The Commission has interpreted the de minimis exception in light of this jurisdictional limitation, stating that a foreign person must have made swap transactions with United States persons exceeding $8 billion in the previous 12 months to be required to register as a swap dealer. *See* Interpretive Guidance and Policy Statement Regarding Compliance with Certain Swap

Regulations, 78 Fed. Reg. 45292, 45301, 45308–09 (July 26, 2013); Cross-Border Application of Certain Swap Provisions of the Commodity Exchange Act, 77 Fed. Reg. 41214, 41218–21 (July 12, 2012); *see also Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 393–94 (D.D.C. 2014); Julia H. Iodice, *The U.S. Approach to Swaps Regulation: Striking a Balance Between Domestic and Foreign Interests*, 4 ST. JOHN'S J. INT'L & COMP. L. 37, 48 (2013). To determine whether a "non-U.S. person" has met the de minimis threshold, the Commission considers the person's swaps with "counterparties who are U.S. persons" and the United States person's "guaranteed affiliates." 78 Fed. Reg. at 45326. The Commission defines United States person to include "[a]ny natural person who is a resident of the United States." *Id.* at 45316.

When Waraich applied for his account at International Capital Markets, the de minimis amount was $3 billion. *See* 17 C.F.R. § 1.3(ggg)(4) (2013) (effective Jan. 2, 2013). Waraich has not alleged any basis to infer that International Capital Markets made over $3 billion in swap transactions with United States persons in the 12 months preceding his application or transactions. His complaint does not support a plausible inference that International Capital Markets had to register with the Commission. Waraich has failed to state a plausible claim that International Capital Markets violated the Commodities Exchange Act by representing that it complied with United States law. (Docket Entry No. 1 at 3).

Because Waraich has not made a *prima facie* showing of personal jurisdiction and his complaint does not state a plausible claim against International Capital Markets, the court denies the default-judgment motion. (Docket Entry No. 27).

## III. Conclusion

Waraich's motions to set aside the dismissal and for leave to amend are denied. (Docket Entry Nos. 28–29, 31). Waraich's motion to grant a default judgment is also denied. (Docket Entry No. 27).

SIGNED on May 30, 2019, at Houston, Texas.

                                             _____
                                                       Lee H. Rosenthal
                                             Chief United States District Judge